UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-14192-CIV-MARTINEZ/MAYNARD

ELISEALYNN LANOU,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Elisealynn Lanou, brings this action under the Social Security Act seeking judicial review of Defendant's final decision denying her applications for disability benefits. DE 1. Plaintiff timely exhausted her administrative remedies, and Defendant's decision is ripe for judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

After Defendant filed the certified administrative record, DE 14 (cited herein as "R. __"), Plaintiff filed her Motion for Summary Judgment. DE 17. Defendant responded with a Motion for Summary Judgment, DE 18, and Plaintiff replied, DE 19. Having carefully considered the parties' briefing and the record, I recommend that Plaintiff's Motion for Summary Judgment, DE 17, be **DENIED**; that Defendant's Motion for Summary Judgment, DE 18, be **GRANTED**; and that Defendant's administrative decision be **AFFIRMED** for the following reasons.

## BACKGROUND

On September 30, 2019, Plaintiff applied for supplemental security income and disability insurance benefits, alleging a disability onset date of December 31, 2018, due to hypertension, stroke—cerebrovascular accident, type 2 diabetes, mini stroke—transient ischemic attack ("TIA"),

diabetic neuropathy of the hands and right foot, and migraine headaches.  R. 371-88, 424.  Plaintiff was 54 years and 11 months old on her alleged disability onset date with an Eleventh Grade education and past relevant work as a building superintendent, shoe sales person, sales associate, security guard supervisor, and gate guard.  R. 42, 53-54, 112, 425-26.

Plaintiff's claim was denied initially and on reconsideration.  R. 222-36, 239-64.  On December 1, 2020, at Plaintiff's request, Administrative Law Judge ("ALJ") Amber Downs held a telephonic hearing at which Plaintiff, Plaintiff's counsel, and a vocational expert appeared.  R. 59-86.  Shortly thereafter, on December 16, 2020, ALJ Downs issued a decision finding Plaintiff not disabled.  R. 198-208.  On June 16, 2021, the Appeals Council remanded this first decision for failure to consider and exhibit a timely submitted medical source statement.  R. 216-17.  On remand, the ALJ was instructed to "[c]onsider and exhibit the medical source statement from Brittany King, PA-C, as well as all other material evidence in accordance with 20 CFR 404.935(a), 404.1512 and 416.1435(a), 416.912; HALLEX I-2-1-15, I-2-6-58 A, and I-2-6-59 B."  *Id*.

Pursuant to this remand, on October 19, 2021, ALJ Downs convened another telephonic hearing at which Plaintiff, Plaintiff's counsel, and a new vocational expert appeared.  R. 36-58.  On November 29, 2021, ALJ Downs issued another decision finding Plaintiff not disabled.  R. 13-27.  On March 28, 2022, the Appeals Council denied Plaintiff's timely request for review of this decision.  R. 1-4.  Plaintiff exhausted her administrative remedies and this lawsuit timely followed.

## STANDARD OF REVIEW

To qualify for Social Security benefits, a claimant must show that she is disabled.  *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. §§ 404.1512(a), 416.912(a).  The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A disability benefits claim follows a multi-layered process before it can be reviewed in federal court. A claimant first applies to a state agency for disability determinations, 42 U.S.C. § 421(a), after which the claimant is entitled to an evidentiary hearing before an ALJ. *Heckler v. Day*, 467 U.S. 104, 106–07 (1984). An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines if a claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"); (4) can perform past relevant work based on a residual functional capacity ("RFC") assessment; and (5) retains the ability to perform any work in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); *Hines–Sharp v. Comm'r of Soc. Sec.*, 511 Fed. Appx. 913, 915 n.2 (11th Cir. 2013). If an individual is found disabled or not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 416.920(a).

A claimant may appeal an ALJ's unfavorable decision to an Appeals Council that must review the case and determine if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Heckler*, 467 U.S. at 106-07; 20 C.F.R. § 404.970(a). After completing the foregoing administrative process, a claimant may seek review in federal court. 42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).

Under governing regulations, the Social Security Administration conducts its "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, social security administrative hearings "are inquisitorial rather than adversarial." *Washington*, 906 F.3d at 1364 (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

On review in federal court, the scope of review is limited to determining if (1) substantial evidence supports the Commissioner's findings, and (2) the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). To make this determination, a reviewing court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

In testing for substantial evidence, a court may not "reweigh the evidence" or "decide the facts anew." *Winschel*, 631 F.3d at 1178. Instead, so long as the ALJ's findings are supported by

substantial evidence, they are conclusive, and the court must defer to the ALJ's decision even if the evidence preponderates against it. *Crawford*, 363 F.3d at 1158-59; *see also Biestek*, 139 S. Ct. at 1157 (the governing standard of review defers to the presiding ALJ, "who has seen the hearing up close"). However, the court will not "merely rubber-stamp a decision ... [and] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019); *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) ("Within this narrowly limited role, however, the federal courts 'do not act as automatons' … '[w]e retain an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable") (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). Remand is appropriate for further factual development where the record reveals evidentiary gaps that result in unfairness or clear prejudice. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018).

A reviewing court must also review the ALJ's decision to determine if the correct legal standards were applied. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide sufficient reasoning for determining that the proper legal analysis has been conducted, then the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## **THE ALJ'S DECISION**

In the ALJ's most recent decision dated November 29, 2021, the ALJ proceeded through the five-step analysis as follows: At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 31, 2018. R. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: history of cerebrovascular accident with

persistent right-sided hemiparesis, hypertension, migraine, and obesity.[1]  R. 19-22.  At step three, notwithstanding the noted impairments, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the agency-listed impairments. R. 22.  The ALJ then concluded that Plaintiff retained the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; she can sit for a period of 6 hours, stand for a period of 6 hours, walk for a period of 6 hours, and push/pull as much as she can lift/carry; she can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds; she can occasionally operate hand controls on the right; she is limited to occasionally handling and fingering on the right; and she is limited to frequent exposure to unprotected heights, moving mechanical parts, extreme cold, extreme heat, and limited to a loud noise level.

R. 22.  In formulating this RFC, the ALJ considered Plaintiff's subjective complaints and determined that, while the evidence established the presence of medically determinable impairments that could reasonably be expected to cause the alleged symptoms, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  R. 24.  In support of this finding, the ALJ cited and discussed medical records, treatment notes, and the opinions of various medical providers and consultants.  R. 22-26.

At step four, considering Plaintiff's RFC and based on vocational expert testimony, the ALJ found Plaintiff capable of performing her past relevant work as a sales representative and gate guard. R. 26-27.  Based on this finding, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act from her alleged onset date of December 31, 2018 through the ALJ's decision date of November 29, 2021.  R. 27.

---

[1] The ALJ acknowledged that Plaintiff had been diagnosed with hyperlipidemia, diabetes mellitus, allergic rhinitis, vitamin D deficiency, elevated liver enzymes, dyspareunia, bipolar disorder, mixed anxiety/depressive disorder, and that she had a history of laparoscopic cholecystectomy, however the ALJ found these impairments non-severe.  R. 19-22.

## **DISCUSSION**

Plaintiff raises two arguments in this appeal. First, Plaintiff contends that the ALJ's RFC is unsupported by substantial evidence and legally erroneous for failure to properly evaluate opinion evidence and Plaintiff's need for an assistive device. Second, Plaintiff contends that the ALJ failed to incorporate Plaintiff's limitations in attention and concentration into the RFC despite finding the opinion of psychiatrist Dr. Garcia Prieto "mostly persuasive."

Plaintiff's two arguments hinge on a review of the ALJ's RFC assessment and consideration of opinion evidence. The RFC is a "medical assessment of what the claimant can do in a work setting despite any mental, physical, or environmental limitations caused by the claimant's impairments or related symptoms." *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 689 (11th Cir. 2013); *see also Mills v. Berryhill*, 824 F. App'x 894, 899 (11th Cir. 2020); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). It is strictly the ALJ's duty to determine the claimant's RFC. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877–78 (11th Cir. 2013). The ALJ must consider the claimant's impairments, both severe and non-severe, and all evidence of record. *Phillips*, 357 F.3d at 1238; *see Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). In formulating the RFC, the ALJ is not required to refer to every piece of evidence, provided that the ALJ provides sufficient reasoning for the reviewing court to evaluate whether the ALJ considered the claimant's medical condition as a whole. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) ("So long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record.").

In 2017, the Social Security Administration revised its regulations regarding consideration of medical evidence and those revisions apply to all claims filed after March 27, 2017. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Plaintiff filed her claim on September

30, 2019, the revised regulations apply here. 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, the ALJ need not give specific weight to a treating source opinion. The ALJ must, however, evaluate and articulate the persuasiveness of a medical opinion by considering several enumerated factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) & (b)(2); 416.920c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), (4), & (5); 416.920c(c)(3)(i)-(v), (4), & (5).

With the above governing principles in mind, I will address each of Plaintiff's two arguments in turn below.

### A. THE ALJ'S CONSIDERATION OF OPINION EVIDENCE AND PLAINTIFF'S NEED FOR AN ASSISTIVE DEVICE

Here, after considering and discussing record evidence, the ALJ ultimately concluded that Plaintiff had the RFC to perform light work with specified limitations. R. 22. Plaintiff argues that the ALJ's RFC determination is unsupported because "she failed to properly evaluate the opinion of Dr. Mousli and failed [to] account for Plaintiff's need for an assistive device." DE 17 at 8.

Plaintiff further argues that "PA-C King's limitation to sedentary work would grid Plaintiff to disability under the Medical-Vocational guidelines." *Id.* at 13. Defendant counters that the ALJ properly analyzed all available medical evidence, including the opinions of Dr. Mousli and PA-C King, and properly considered if Plaintiff would require an assistive device. DE 18 at 4-15. Upon careful review, I agree with Defendant.

Dr. Hasan Mousli is a board-certified neurologist who treated Plaintiff. R. 774. Plaintiff first presented to Dr. Mousli in July 2018 and she reported right-sided weakness, numbness, and tingling due to her history of strokes in 2013 and 2016. R. 589. Plaintiff also reported memory issues, numbness and tingling of the left hand, muscles aches and weakness, and swelling of the extremities. *Id.* On observation, Dr. Mousli found Plaintiff had back stiffness, 2/5 strength in the right extremities, 4/5 strength in the left extremities, abnormal coordination, and an unsteady gait. *Id.* Dr. Mousli noted normal strength, no major joint pain, and right sided weakness. *Id.* Dr. Mousli assessed hemiplegia and/or hemiparesis following stroke, unsteady gait, memory impairment, and essential hypertension. R. 589-90. Dr. Mousli affirmed these findings in January 2019. R. 586-87.

Over a year and a half later, on November 6, 2020, Dr. Mousli completed a Treating Source Statement in which he checked off that Plaintiff would be off task for greater than 25% of the workday; could maintain attention and concentration for less than 30 minutes at a time; and would be absent from work more than four days per month. R. 774. Dr. Mousli indicated that Plaintiff could lift and carry ten pounds occasionally and up to ten pounds continuously; could rarely lift and carry 20 pounds; could sit for five hours per workday; could stand/walk for four hours per workday; required a sit/stand option; "may need cane, walker, or wheelchair;" could occasionally use her left hand/feet; could rarely use her right hand/feet; was limited to never or rarely performing postural activities; was limited to no or rare exposure to environmental limitations. R. 774-77. In support

of his findings, Dr. Mousli cited Plaintiff's "right sided weakness due to stroke" and her "unsteady gait" making her a "high risk for falls." *Id.*

The ALJ found Dr. Mousli's opinion "minimally persuasive." R. 23. The ALJ reasoned that the "extreme limitations suggested by Dr. Mousli were unsupported by his own treatment history and the overall record." R. 24. For instance, the ALJ noted that while Dr. Mousli's "treatment notes indicated reduced right upper/lower extremity strength, abnormal gait, and unsteady gait, there was no mention of use of a cane or any other assistive device." R. 24. The ALJ additionally noted that Dr. Mousli's notes showed Plaintiff had no major joint pain; normal strength except for right-sided weakness; a normal back and neck; and generally normal neurological examinations. *Id.* (citing Dr. Mousli's treatment notes at R. 585-90). Moreover, the ALJ pointed out that primary care treatment notes consistently described Plaintiff as "ambulatory, walking without restrictions, able to care for herself, and walking/climbing stairs without difficulty. There was also no mention of any cane or any other assistive device use except for October of 2021. Examination notes consistently indicated normal gait/station, intact sensory, and normal deep tendon reflexes. Musculoskeletal examination notes indicated normal tone/strength, normal movement of all extremities, and no cyanosis/edema. Examination of the back was consistently normal." R. 24 (citing treatment notes at R. 561-83, 602-40, 655-707, 746-62, 935-43).

The ALJ's findings fully and fairly coincide with the treatment notes of Dr. Mousli and other medical providers during the relevant timeframe. R. 585-90, 821-33. For instance, in April and May 2017, Plaintiff was seen at Central Florida Health Care where it was noted that she was "healthy-appearing" and in no acute distress; had normal tone and motor strength; demonstrated normal movement of all extremities; had normal gait and station; and had a normal neurologic exam. R. 564-65, 567-68. In October 2017, Dr. Atalla noted that Plaintiff exhibited no acute distress and was ambulating normally. R. 625. Similarly, in May 2019, PA-C King noted that Plaintiff was

"healthy-appearing" and "well-nourished" with no edema in her extremities and she was "ambulating normally." R. 621. Continuing in June, August, and September 2019, physical examination notes signed by PA-C King similarly report that Plaintiff was in no acute distress; ambulated normally; had no edema in her extremities; had normal gait and station; and had normal neurologic examinations. R. 607, 611-12, 615.

In January and July 2020, Plaintiff was in no acute distress; ambulated normally; exhibited no edema in her extremities; had normal gait and station; and had a normal neurological exam. R. 661, 775. As the ALJ acknowledged, in October 2021, examining Dr. Ware noted that Plaintiff showed right-sided weakness (3/5 strength of right arm and leg) and "uses cane prn,"[2] but her neurological exam was normal. R. 936-37.

Overall, I find that the ALJ properly considered the applicable supportability and consistency factors in assessing Dr. Mousli's opinion. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) the more persuasive the medical opinions will be."); 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). The ALJ reasonably found that Dr. Mousli's more restrictive opinion was unsupported by his own treatment notes and was inconsistent with other primary care treatment notes. Because the ALJ addressed the supportability and the consistency of Dr. Mousli's opinion and properly identified substantial evidence in support of her

---

[2] PRN is a medical abbreviation for "pro re nata," which is Latin for "as necessary." *See* MedlinePlus, National Library of Medicine, Understanding Medical Words: A Tutorial, Appendix B: Some Common Abbreviations, available online at: https://medlineplus.gov/appendixb.html (last accessed 7/18/2023).

decision to find the opinion minimally persuasive, the ALJ complied with governing law and regulations. Upon independent review, I detect no reversible error in this regard.

I similarly find that the ALJ complied with the regulatory framework in assessing PA-C Brittany King's opinion. PA-C King examined Plaintiff various times beginning in May 2019. In a letter dated December 8, 2020 and co-signed by Dr. Donald Geldart, PA-C King noted Plaintiff's "multiple chronic medical conditions including Hypertension, Prediabetes, history of major stroke in 2013, and a subsequent TIA in 2018, which has le[]d to early chronic small vessel brain disease, and chronic migraine headaches." R. 834. PA-C King also noted Plaintiff's bipolar affective disorder for which she takes medication. *Id.* PA-C King opined that due to the physical deficits following her stroke, TIA, chronic migraines, and bipolar affective disorder, Plaintiff "is limited to sedentary work that will not place a physical strain on her body." *Id.* PA-C King also recommended Plaintiff should not be placed in a position to operate heavy machinery or make urgent decisions. *Id.*

As required on remand from the Appeals Council, the ALJ expressly considered this opinion and found it "unpersuasive" because it was inconsistent with the signatories' treatment notes and the overall record. R. 24. For instance, the ALJ noted that the examination notes from PA-C King's practice consistently indicated normal gait/station, intact sensory, normal deep tendon reflexes, normal musculoskeletal examinations, normal movement of all extremities, no cyanosis/edema, and normal back examinations for Plaintiff. R. 24, 564-65, 567-68, 625. The ALJ noted the reduced right-sided strength documented in October 2021 treatment notes but found that the statements in PA-C King and Dr. Geldart's letter "are too vague in nature without any explanation of specific limitations." R. 24. The ALJ properly assessed the supportability and the consistency of this opinion and properly identified substantial evidence in support of her decision to find it unpersuasive

in the grander scheme of the objective medical evidence. Upon independent review, I find no reversible error in this regard.

Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's need for an assistive device. I disagree. Relevant here, Social Security Ruling 96-9P provides as follows:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case …

SSR 96-9P, 1996 WL 374185, at *7. Notably, under SSR 96-9P, "a claimant must present medical documentation (1) establishing her need for a cane or other device and (2) describing the circumstances for which it is needed." *Charity v. Comm'r of Soc. Sec.*, 2020 WL 5797623, at *3 (M.D. Fla. Sept. 29, 2020). "Without such a showing, an [ALJ] would not be required to include the use of an assistive device in the RFC or the hypothetical to the vocational expert." *Id.*

The ALJ here properly considered the lack of objective medical evidence establishing Plaintiff's need for a cane. As discussed above, the ALJ cited primary care treatment notes consistently described Plaintiff as "ambulatory, walking without restrictions, able to care for herself, and walking/climbing stairs without difficulty." R. 24. The ALJ pointed out that "[t]here was also no mention of any cane or any other assistive device use except for October of 2021" and noted further that "[e]xamination notes consistently indicated normal gait/station, intact sensory, and normal deep tendon reflexes. Musculoskeletal examination notes indicated normal tone/strength, normal movement of all extremities, and no cyanosis/edema." *Id.* Consistent with the ALJ's findings, apart from the isolated treatment note from October 2021 identifying the use of a cane as needed, Plaintiff's testimony regarding her cane use at the first hearing before the ALJ, and Dr. Mousli's vague notation that Plaintiff "may" need an assistive device, the objective evidence of

record over the relevant timeframe consistently indicated that Plaintiff did not use or need a cane. Specifically, as noted by the ALJ, Plaintiff appeared for several examinations where she exhibited normal gait/station, intact sensory, normal deep tendon flexes, and normal musculoskeletal examinations.  R. 564-65, 567-68, 607, 611-12, 615, 621, 625, 661, 755.  While the ALJ did not expressly state that Plaintiff's cane was not medically necessary, the ALJ provided substantial evidence demonstrating that Plaintiff failed to establish her need for a cane.  As such, the ALJ was not required to include a cane limitation in Plaintiff's RFC.

### B. DR. GARCIA PRIETO'S OPINION AND THE ALJ'S FINDINGS REGARDING PLAINTIFF'S ATTENTION AND CONCENTRATION

Next, Plaintiff argues that, when assessing Plaintiff's RFC, the ALJ failed to explain her omission of Dr. Garcia-Prieto's opinion regarding Plaintiff's inability to sustain attention and concentration for less than one hour. DE 17 at 14.  Defendant responds that this argument lacks merit because Plaintiff fails to indicate what limitations the ALJ should have included relating to attention and concentration and because an ALJ is not required to adopt the entirety of an opinion the ALJ finds persuasive.  DE 18 at 15-16.  Upon consideration, I agree with Defendant.

Dr. Carlos Emilio Garcia-Prieto is a board-certified psychiatrist who treated Plaintiff.  R. 717.  Plaintiff first presented to Dr. Garcia-Prieto on August 17, 2020 for a psychiatric exam.  R. 711.  Plaintiff reported fatigue, sleep disturbance, decreased concentration, anxiety, depression, apathy, emotional detachment, impulsive behavior, racing thoughts, paranoid ideations, guilt, and social isolation.  *Id.*  Dr. Garcia-Prieto noted that Plaintiff was in no acute distress and was fully oriented with logical and organized functioning but he also observed psychomotor retardation and decreased eye contact.  R. 712-13. He found Plaintiff's affect labile, describing it as indifferent, blunted, flat, restricted, and tearful.  R. 713.  He further noted that Plaintiff was easily distracted and

demonstrated anger, worry, and pained faces. *Id.* Dr. Garcia-Prieto diagnosed bipolar disorder and primary insomnia, and prescribed ambien and risperidone. *Id.*

Shortly thereafter, on August 25, 2020, Dr. Garcia-Prieto completed a Treating Source Statement in which he noted Plaintiff's sleep disturbance, decreased energy, emotional lability, psychomotor retardation, and decreased eye contact. R. 718. On a five-point scale from no to extreme limitations, Dr. Garcia-Prieto noted no limitations in Plaintiff's ability to understand, remember, or apply information; ability to interact with others; ability to concentrate, persist, or maintain pace; ability to adapt or manage oneself, or understanding and memory. R. 719-20. Dr. Garcia-Prieto similarly noted no limitations in remembering locations and work-like procedures; understanding and carrying out short and simple instructions; and understanding and carrying out detailed but uninvolved written or oral instructions. R. 720. Dr. Garcia-Prieto checked a box indicating that Plaintiff would be able to sustain concentration and attention for less than one hour before needing redirection or requiring a break. *Id.*

On September 10, 2020, Plaintiff returned to see Dr. Garcia-Prieto and reported high irritability, euphoria alternating with periods of depression, emotional lability, racing thoughts, and hypersomnia. R. 768. Plaintiff also reported being easy to anger and having poor impulse control. *Id*. Dr. Garcia-Prieto described Plaintiff's mood as euthymic, her affect as normal, and her thought processes as "[n]ot easily distracted" with intact insight. R. 769. As before, Dr. Garcia Prieto diagnosed bipolar disorder with current manic episode and prescribed the same two prescription medications. R. 770. Dr. Garcia-Prieto affirmed these findings following additional examinations of Plaintiff in October, November, and December 2020. R. 779-84, 883-85.

In evaluating Dr. Garcia Prieto's opinion, the ALJ found it "mostly persuasive" and supported by the record "for the most part and the determination of non-severe mental impairments." R. 23. The ALJ noted the record indications of Plaintiff's conservative mental health treatment by

medication, brief supportive therapy, and consistently unremarkable mental status examinations with no sign of emergency care or psychiatric hospitalization within the relevant period. *Id.*

The ALJ accurately summarized Dr. Garcia-Prieto's opinion with one exception. As Plaintiff properly notes, the ALJ inaccurately indicated that Dr. Garcia-Prieto found Plaintiff capable of maintaining attention and concentration for one to two hours when, in fact, Dr. Garcia-Prieto had checked the box indicating that Plaintiff could maintain attention and concentration for less than one hour before needing redirection. *Compare* R. 23 *with* R. 720. However, considering the record as a whole and the ALJ's overall discussion of Dr. Garcia-Prieto's opinion, I disagree with Plaintiff's argument that this misstatement constitutes a "gross mischaracterization." DE 19 at 3.

The objective evidence cited and discussed by the ALJ in her opinion showed that Plaintiff generally did not demonstrate any problems with attention and concentration during her mental status examinations. R. 769 (reporting normal developmental and cognitive testing; and further noting that Plaintiff was not easily distracted with no abnormal behaviors or impaired thought content noted), 772 (same), 881 (same), 884 (same). Moreover, on a consistent reported basis, Plaintiff's emotional intelligence was normal; her remote memory was not impaired; her immediate recall was normal; she demonstrated adequate fund of knowledge; her calculation was normal; she was able to spell the word "WORLD" forward and backward; and her judgment was not impaired. R. 769, 772, 881, 884. Although Dr. Garcia Prieto noted that Plaintiff was easily distractible during a visit in August 2020, he also described her as "Not inattentive … Not Disinterested … Cooperative." R. 767. In addition, after completing his Treating Source Statement, Dr. Garcia Prieto noted that Plaintiff was not easily distracted during four monthly visits from September through December 2020. R. 769, 772, 881, 884.

Under the circumstances, I am unpersuaded by Plaintiff's argument that the ALJ committed reversible legal error by not including a limitation relating to Plaintiff's attention and concentration

in the RFC. On the contrary, in assessing Plaintiff's RFC, the ALJ reasonably considered Dr. Garcia-Prieto's opinion and found it to be mostly persuasive and consistent with available evidence. R. 23, 719-20. As discussed above, it bears emphasizing that a Plaintiff's RFC is squarely within the province of the ALJ to determine. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877–78 (11th Cir. 2013). An ALJ is not required to adopt the entirety of any given opinion found persuasive so long as the ALJ fulfills his or her duty to properly assess and articulate substantially supported reasons for determining a claimant's RFC based on all the relevant medical and other evidence. *See Breaux v. Comm'r of Soc. Sec.,* No. 20-21917-Civ-Altonaga/Goodman, DE 29 (S.D. Fla. July 22, 2021) (explaining that the "requirements within [the R]egulations . . . do not compel an ALJ to adopt every part of an opinion that she finds persuasive into the RFC" and finding that the ALJ "was not required to adopt any particular limitation in her RFC determination merely because she found these opinions to be persuasive"), *report adopted*, 2021 WL 3721547 (S.D. Fla. Aug. 23, 2021); *Rivera Misla v. Comm'r of Soc. Sec.*, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021) (citing 20 C.F.R. § 404.1520c(a)) (rejecting argument that ALJ erred in finding two opinions "very persuasive" but failing to adopt opined need for an "understanding supervisor" because "an ALJ need not adopt every part of an opinion that the ALJ finds persuasive"); *Alexander v. Berryhill*, 2019 WL 851414, at *8 (M.D. Fla. Feb. 22, 2019) (finding that an ALJ did not err in declining to adopt the entirety of an opinion where the ALJ sufficiently buttressed his decision). The ALJ fulfilled this duty here and the decision should thus be affirmed.

## **CONCLUSION**

The operative inquiry at this stage of review is whether the ALJ properly evaluated Plaintiff's medical condition as a whole and whether the ALJ's determination is supported by substantial evidence. In this case, following my review of the record, I am satisfied that the ALJ considered Plaintiff's condition as a whole and the ALJ's determinations are properly substantiated.

The ALJ conducted a conscientious analysis of relevant medical opinions and other evidence concerning Plaintiff's impairments, abilities, and RFC, and the ALJ supported her findings with specific reasons and references to the available record evidence.

Accordingly, I respectfully **RECOMMEND** that Plaintiff's Motion for Summary Judgment, DE 17, be **DENIED**; that Defendant's Motion for Summary Judgment, DE 18, be **GRANTED**; and that Defendant's final administrative decision be **AFFIRMED**.

### NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Jose E. Martinez. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of Non-Objection within five (5) days of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 28th day of July, 2023.

_____
SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE